**B & M COAL CORPORATION,**
**Plaintiff-Appellant,**

**v.**

**UNITED MINE WORKERS OF AMERICA and David R. Norrick, Individually and as a Member of the United Mine Workers of America et al., Defendants,**

**the Spencer County Clerk, Spencer County Auditor, Spencer County Council, and the Spencer County Board of Commissioners, Intervenors-Appellees.**

No. 4–884A231.[1]

Court of Appeals of Indiana,
First District.

July 8, 1985.

Rehearing Denied Aug. 21, 1985.

---

1. This case was diverted from the Fourth District by order of the Chief Judge.

Dennis M. Stark, Richard S. Eynon, Richard S. Eynon, P.C., Columbus, for plaintiff-appellant.

Jack R. Robinson, Rockport, for intervenors-appellees.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

B & M Coal (B & M) appeals from an adverse decision of the trial judge, after a bench trial, denying its claim for interest which accrued on an appeal bond. We reverse.

## FACTS

The present dispute is between Spencer County (County) and B & M but it arose out of litigation initiated by B & M against the United Mine Workers (U.M.W.). In December 1977, a labor dispute arose between B & M and its employees affiliated with U.M.W. The U.M.W. called a nationwide strike paralyzing coal mining in Indiana except for non-union operations along the Ohio River. These non-union operations precipitated unprovoked harassment

from the union and B & M obtained a temporary restraining order to protect the workers. On January 7, 1978, B & M was raided by approximately 400 to 500 individuals, in violation of the court order, who caused extensive property damage to the premises. B & M sued the 191 people arrested at the scene and recovered a $173,873.09 judgment plus $10,117.72 in fees. The defendants sought to stay enforcement pending appeal and the court granted the stay on condition that $200,000 be deposited as an appeal bond. The U.M.W. and union members deposited a total of $160,363.00 with the clerk. The Fourth District Court of Appeals affirmed the decision in part but remanded for a further hearing on damages. *Bottoms v. B & M Coal Corporation* (1980), Ind.App., 405 N.E.2d 82. Ultimately, B & M received a total judgment of $222,232.43.

The original deposit of $160,363 by the defendants was invested by the Spencer County Clerk from May 1979 to the time of the bench trial in May 1984. Until 1982, all interest accruing on the fund was deposited by the clerk into the County general fund pursuant to statutory authorization. On February 24, 1982, the court ordered that from this date interest accruing must be returned to the fund. From February 1982 on, interest accordingly was added to the principal and as of the date of the bench trial the bond totalled $191,876.97 which has since been paid to B & M. However, the balance of the judgment remains unpaid and uncollectible.

The parties agree that the only amount at issue is $34,440.43 which represents accrued interest from 1979 until the court's 1982 order. At the 1984 bench trial, B & M argued this amount belonged to it because of its unsatisfied judgment. However, the

trial court agreed with the county, which intervened in 1982, and found the $34,-440.43 belonged to the county pursuant to a provision in the Indiana Code. B & M now appeals this judgment.

## ISSUE

Due to our decision we need address only the single issue of whether Indiana Code section 5–13–1–3.5(b), which allows a county to retain interest accrued on funds deposited with the county clerk, violates the constitutional proscription against governmental appropriation of private property without just compensation or due process.

## DISCUSSION AND DECISION

Indiana Code section 5–13–1–3.5(b) provides that the Clerk of the county court may invest any and all monies deposited with him into interest bearing accounts in local banks.

"(b) The Clerk of any Circuit Court of this state may invest any or all of his total monies on deposit. He shall invest this money in any or all of the kinds of investments permitted in this chapter. He shall credit interest on these investments to the County general fund of his County."

This statute represents the authority under which the Spencer County Clerk acted when she invested the money from the cash bond and ultimately deposited the interest accruing from 1979 to 1982 in the general county fund. It is the constitutionality of this statute, as it was applied in this case, which is before this court.

■ Both the United States and Indiana Constitutions prohibit the government from taking private property unjustly.[2] Since,

2. U.S. const. amend. 5 states:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, ..., nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

U.S. const. amend. 14 states:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within

as a general rule, interest follows principal, our inquiry necessarily begins with determining the extent to which B & M had a protectable property interest in the fund deposited with the clerk. *Webb's Fabulous Pharmacies, Inc. v. Beckwith* (1980), 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358. Generally, the dimensions of particular property interests stem from state law. "[A] mere unilateral expectation or an abstract need is not a property interest. [Citation omitted.]" *Id.* The fund deposited in the present case represented an appeal bond which suspended enforcement of the judgment pending appellate review. Indiana Rules of Procedure, Trial Rule 62(D); *Dzur v. Northern Indiana Public Service Company* (1972), 257 Ind. 674, 676, 278 N.E.2d 563, 564–65; *Western & Southern Life Insurance Company v. Lottes* (1945), 116 Ind.App. 559, 562, 63 N.E.2d 146, 147. The purpose of the fund was to insure B & M's judgment if the appellants failed on appeal. In short, the fund would go to B & M if it could persuade the appellate courts to affirm the trial court's judgment. Therefore, B & M had more than a unilateral expectancy or abstract need because the principal represented a debt owing B & M by virtue of the trial court's judgment.

Although during the period in question the ownership of the fund was uncertain, B & M still had a sufficient property interest in the fund. In *Webb's*, the Supreme Court determined that interest, which accrued on an interpleader fund while creditor's rights were being litigated, should follow the fund. In that case, Eckerds, Inc. offered to buy Webb's Fabulous Pharmacies but the tendered purchase price was insufficient to cover Webb's existing indebtedness. Consequently, Eckerd's interpleaded the purchase price pursuant to Florida law and a receiver was appointed to determine the claims of creditors who filed against the fund. While the money was in the clerk's hands he invested it in interest bearing accounts. Later, the clerk delivered only the principal to the receiver keeping the interest for the county pursuant to Fla.Stat. § 28.33.[3]

The Supreme Court unanimously held that expropriation of the interest was unconstitutional. The Court found the creditors had a protectable property interest in the fund despite the fact that they were not immediately entitled to it.

"It is true ... that none of the creditor claimants had any right to the deposited fund until their claims were recognized and distribution was ordered. [Citation omitted.] That lack of immediate right, however, does not automatically bar a claimant ultimately determined to be entitled to all or a share of the fund from claiming a proper share of the interest, the fruit of the fund's use, that is realized in the interim."

*Webb's*, 449 U.S., at 161–62, 101 S.Ct. at 451, 66 L.Ed.2d at 365. Similarly, although B & M had no immediate right to the appeal bond money, its purpose was to secure B & M's recovery if it ultimately prevailed. B & M has ultimately prevailed and consequently, the *Webb's* analysis

---

its jurisdiction the equal protection of the laws."

Ind. const. art. 1 § 21 states:
"No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

**3.** Fla.Stat. § 28.33 states:
"The clerk of the circuit court in each county shall make an estimate of his projected financial needs for the county and shall invest any funds in designated depository banks in interest-bearing certificates or in any direct obligations of the United States in compliance with federal laws relating to receipt of and withdrawal of deposits.... Moneys deposited in the registry of the court shall be deposited in interest-bearing certificates at the discretion of the clerk, subject to the above guidelines.... *All interest accruing from moneys deposited shall be deemed income of the office of the clerk of the circuit court* investing such moneys and shall be deposited in the same accounts as are other fees and commissions of the clerk's office. Each clerk shall, as soon as is practicable after the end of the fiscal year, report to the county governing authority the total interest earned on all investments during the preceding year. (Emphasis supplied.)"

leads us to conclude B & M possessed a protectable property interest in the appeal bond despite the fact that recovery was, for a time, uncertain.

We now turn to the question of whether B & M had a protectable property interest in the $34,440.43 in accrued interest. In *Webb's*, the court found that one who has an interest in the principal necessarily has an interest in the fruit from that principal. In other words, interest follows principal. *Webb's* at 162, 101 S.Ct. at 451, 66 L.Ed.2d at 365. Added to this are the unique circumstances of this case where the appeal bond's principal is insufficient to satisfy the judgment. Under Indiana law, the right to recover on a civil judgment is a property right. *Griffin v. Wilcox* (1863), 21 Ind. 370, 373. As it stands, the appeal bond's principal is insufficient to satisfy a judgment and interest accrued from that principal, sufficient to make B & M whole, is put out of B & M's reach. The fact that interest follows principal together with B & M's right of recovery establishes its property interest in the $34,440.43 of accrued interest.

With recognition of B & M's protectable property interest we now consider whether the Spencer County Clerk's retention of the interest constituted an uncompensated taking without due process. In cases such as this, where the government interference is an expropriation of property, there is clearly a taking under the constitution. *Loretto v. Teleprompter Manhattan C A T V Corp.* (1982), 458 U.S. 419, 427 n. 5, 102 S.Ct. 3164, 3171, n. 5, 73 L.Ed.2d 868, 876–77 *quoting from* Michelman, *Property, Utility and Fairness: Comments on the Ethical Foundation of "Just Compensation" Law* 80 Harv.L.Rev. 1165, 1184 (1967). In the present case, the county government expropriated what was undeniably private property. Under no set of circumstances would the county ever be entitled to the bond principal. The bond was private property belonging to a private party. Because the bond was private property, interest accruing thereon was necessarily private property notwithstanding Ind.Code § 5–13–1–3.5(b). *Webb's*, 449

U.S., at 164, 101 S.Ct. 452, 66 L.Ed.2d at 366–67. The state may not transform private property into public funds by legislation. *Id.* This is the very thing the Taking Clause in the constitution was intended to prohibit as an arbitrary exercise of governmental power. *Id.* When the government physically takes possession of exclusively private property or money, the party entitled to the property or money must be justly compensated therefor unless the government is able to justify such taking as either an appropriate regulation of the property's use, *Andrus v. Allard* (1979), 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210, or payment of an amount lawfully owed the government, *Webb's. Nowak, Constitutional Law, West Hornbook Series,* p. 492–93 n. 66 (2d Ed.1983).

The county argues that retention of the accrued interest is compensation for time and manpower expended by the county clerk's office in managing the fund from 1979 to 1982. Therefore, the county contends that keeping the interest was payment of an amount lawfully owed the government. To support its position, the county points to the narrow language of the Court's holding in *Webb's.* The *Webb's* Court pointed out that under Florida law a clerk may retain a calculated amount of money deposited in his registry as compensation for services rendered. In *Webb's* the clerk appropriated the statutory percentage for his services but also retained the balance of the interest on the theory that it constituted public funds. The court concluded that because the clerk had already exacted payment for services pursuant to state law, the balance of the interest retained as public funds was unconstitutional.

"We hold that under the narrow circumstances of this case—*where there is a separate and distinct state statute authorizing a clerk's fee 'for services rendered' based upon the amount of principal deposited;* where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute in order for

the depositor to avail itself of statutory protection from claims of creditors and others—Seminole County's taking unto itself, under § 28.33 and 1973 Fla.Laws, ch. 73–282, the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments. *We express no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders.* [Emphasis supplied.]"

*Webb's*, 449 U.S., at 164–65, 101 S.Ct. 452–53, 66 L.Ed.2d 367. The County argues that because it never exacted a fee for the investment services it rendered, the $34,440.43 should be retained by the county as payment for management of the fund. We disagree.

 Our reading of the applicable statutes concerning clerk's fees leads us to conclude the type of services rendered by the Spencer County Clerk in this case were meant to be provided at public expense. Indiana Code section 33–17–2–7 states:

"(a) The Clerk shall keep in his office and open to public inspection a book to be known as the official bond index record.

"(b) In the official bond index record the Clerk shall keep, in alphabetical order, an index of the names of all sureties on any and all bonds of every description filed in his office, indicating the character of such bond upon which such surety appears and a reference to the book and page where such bond is recorded.

"(c) *The official bond index record shall be procured by the Clerk at the expense of the county.* [Emphasis supplied.]"

Appeal bond record keeping is clearly mandated to be done at public expense. In the absence of any other more specific statute addressing management of funds held by the clerk[4] we are persuaded such management, including investment of the bond,

does not entitle the clerk to a fee. Because we find state law does not authorize a fee for the clerk's services, retention of the interest in the present case was just as improper as it was in *Webb's*. Therefore, expropriation of the interest cannot be justified as an amount lawfully due the county and retention of $34,440.43 in the county fund represents an impermissible taking under the Indiana and United States Constitutions.

Judgment reversed.

NEAL and ROBERTSON, JJ., concur.

---

4. The applicable statutes authorizing clerk's fees are contained in Indiana Code 33–17. Nothing in this entire article of the code authorizes a fee

for services remotely comparable to management of funds deposited with the clerk.